# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA LOWE-MALONE,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL A. ASTRUE,<br>Commissioner of Social Security<br><br>                    Defendant. | No.  CV 11-02231 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Nina Lowe-Malone filed this action on March 16, 2011.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on April 4 and 6, 2011.  (Dkt. Nos. 6, 7.)  On November 22, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## **PROCEDURAL BACKGROUND**

On March 18, 2008, Lowe-Malone filed an application for disability insurance benefits, alleging an onset date of May 2, 1999.  Administrative Record ("AR") 85, 145-47.  The application was denied initially and upon reconsideration.  AR 80-81, 85.  Lowe-Malone requested a hearing before an Administrative Law Judge ("ALJ").  AR 120-21.  On November 5, 2009, the ALJ conducted a hearing at which Lowe-Malone, her husband, and a vocational expert testified.  AR 25-79.  On November 19, 2009, the ALJ issued a decision denying benefits.  AR 82-93.  On January 28, 2011, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Lowe-Malone's date last insured was March 31, 2001.  AR 87.  Lowe-Malone had the severe impairments of chronic severe back pain, facet arthropathy, and chronic pain syndrome.  *Id.*

Through the date last insured, Lowe-Malone had the residual functional capacity ("RFC") to perform light work.  AR 88.  She was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She could sit, stand and/or walk for about 6 hours in an 8 hour workday with occasional postural limitations.  *Id.*  Through the date last insured, Lowe-Malone was capable of performing past relevant work as a graduate assistant and medical secretary.  AR 91.  Alternatively, she could have performed other jobs that existed in significant numbers in the national economy.  AR 92.

### C.   Treating Physician

Lowe-Malone contends that the ALJ improperly considered the opinion of a treating physician, Dr. Minehart.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by

another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors including the following:  (1) length of the treatment relationship and frequency of examination;[1] (2) nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion.  *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

"[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date."  *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). The claimant "bears the burden of proof and must prove that he was 'either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expired.'" *Armstrong v. Comm'r of the SSA*, 160 F.3d 587, 589 (9th Cir. 1998) (citation omitted).

---

[1]   "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(I).

[2]   "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."  20 C.F.R. § 404.1527(d)(2)(ii).

On March 27, 2009, Dr. Minehart wrote a short letter to the attention of State Disability.  AR 811.  The letter stated that Lowe-Malone had been under his care since October 16, 2002.  For the past six years, Dr. Minehart had treated her "with surgical procedures and medications which will remain an ongoing therapy due to her condition."  *Id.*  Dr. Minehart diagnosed facet arthropathy, osteoporosis, lumbar facet arthropathy, sacroiliac joint arthropathy and cervical radiculopathy.  *Id.*  He opined that Lowe-Malone "is permanently disabled and has been since her injury in May 1999.  Her limited mobility has prevented her from working in the past and I have advised her that she is not able to work now or in the future."  *Id.*

The ALJ rejected Dr. Minehart's conclusion that Lowe-Malone's disability dated back to May 1999.  AR 90.  The ALJ noted that Dr. Minehart was not her treating or examining physician prior to the date last insured, March 31, 2001.  The ALJ acknowledged that Dr. Minehart's opinion was nevertheless relevant.  However, the medical evidence did not support Dr. Minehart's conclusions.  AR 90-91; *see Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) (ALJ did not err in discounting treating physician's retrospective diagnosis based on additional reasons).

The ALJ's finding is supported by substantial evidence.  The ALJ correctly noted that the question of whether Lowe-Malone was disabled prior to the date last insured is an issue reserved to the Commissioner.  AR 91.  A treating physician's opinion as to the ultimate determination of disability is not binding on an ALJ.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).  Dr. Minehart's letter admits that he did not treat Lowe-Malone prior to October 2002, more than one year after the date last insured.  AR 811.  Nor does Dr. Minehart explain the basis for his conclusion.

The ALJ's finding that the medical records do not support the onset of permanent disability prior to the date last insured of March 31, 2001, is supported by substantial evidence.  Lowe-Malone, a nurse, re-injured her back in April 1999 while lifting a patient.  AR 88, 316.  She stopped working in August 1999.  AR 88, 316.  She was assessed with chronic back pain.  AR 89, 312, 314.  The x-rays and MRIs of her

1  cervical, thoracic and lumbar spine were within normal limits.  AR 90, 313-14, 317, 479,

2  495, 504, 752.  In September 1999, Lowe-Malone's new treating physician, Dr.

3  Winchell, found reduced range of motion and diagnosed back strain.  AR 89, 767.

4      As the ALJ noted, Lowe-Malone's treating physician referred her to various

5  specialists.  AR 89, 753, 763.  On October 7, 1999, Dr. Quigley found that her motor

6  strength, sensation and reflexes were intact.  She had full range of motion but with pain

7  in her neck and tenderness to palpation medial to both scapulae.  AR 762.  On January

8  12, 2000, Dr. Tooke noted that Lowe-Malone's pain was "fairly severe."  AR 316.  She

9  had full range of motion, and had no motor, sensory or reflex deficits.  "Twisting of the

10  thoracolumbar spine causes pain localized to approximately the upper and middle thirds

11  of the thoracic spine."  AR 317.  She could lift 10-15 pounds, and walk, sit or stand for

12  30-60 minutes.  AR 316.  She could do household chores with breaks and take Vicodin

13  for pain.  *Id.*  Dr. Tooke recommended pain management and opined that she was not a

14  surgical candidate.  AR 90, 317.  On February 16, 2000, Dr. Sofer assessed "[h]ighly

15  suspect generalized fibromyalgia syndrome" and noted "diffuse posterior torso

16  tenderness plus localized accentuation in the classic fibromyalgia tender areas plus

17  slight cervical pain and loss of motion."  AR 745; *see also* AR 89.

18      On April 19, 2000, Dr. Hasday issued a Qualified Medical Legal Report for

19  workers compensation.  AR 490.  Dr. Hasday diagnosed chronic, recurrent

20  musculoligamentous injury of the cervicothoracic and lumbosacral spine, and severe

21  spinal deconditioning syndrome with probable chronic pain syndrome.  AR 503.  Lowe-

22  Malone's cervical spine had a range of motion that was 75-80% of normal for extension,

23  right bend and left bend, and minimal to moderate tenderness.  AR 492-93.  Her motor

24  strength and reflexes were normal, but she had slightly decreased sensation below the

25  elbows.  AR 493.  Her lumbosacral spine had range of motion that was 25-50% of

26  normal with pain and mild to moderate tenderness.  AR 494.  Motor strength, sensation,

27  and reflexes were intact.  *Id.*  Dr. Hasday reviewed and summarized Lowe-Malone's

28  medical records.  AR 496-503.

As of April 19, 2000, Dr. Hasday found that Lowe-Malone had become "severely deconditioned" and was "symptomatic in even the most routine activities of daily living in her life." AR 504.  Dr. Hasday prescribed a rehabilitation program including pool therapy and pain management.  *Id.*  He anticipated that her "temporary disability" would last "a minimum of the next 2-3 months."  *Id.*

On October 3, 2000, Dr. Hasday issued a Permanent and Stationary Report that was cited by the ALJ.  AR 89, 484.  Dr. Hasday reviewed Lowe-Malone's progress during the rehabilitation program since April 2000.  By September 5, 2000, she had substantially improved with minimal restriction of spine hyperextension.  She was released to work for modified duties with no lifting greater than 25 pounds.[3]  AR 485. As the ALJ noted, the Glendale Adventist Medical Center records confirmed Dr. Hasday's description.  On September 20, 2000, the physical therapist noted that Lowe-Malone "was able to perform all activities of daily living" and has occasional pulling/pain when she increases activity beyond normal such as hiking and new resistive exercises. AR 89, 330.  In September 2000, Lowe-Malone reported 0/10 pain.  AR 337.  On October 3, 2000, Dr. Hasday's examination of the cervical spine and upper extremities was "unremarkable" with full range of motion.  AR 485.  Lowe-Malone was taking ibuprofen as needed for pain.  AR 486.  Dr. Hasday opined that Lowe-Malone should avoid very heavy work and could not return to her previous occupation of floor nurse. AR 89, 486.  The ALJ further noted that, on February 27, 2001, Lowe-Malone's treating physician indicated she was doing much better.[4]  AR 89, 739.

---

[3]  Thus, at best the records support a closed period of disability from May 1999 until September 2000.  However, it appears Lowe-Malone did not file an application within the prescribed time limits.  20 C.F.R. § 404.320; *Flaten v. Sec'y*, 44 F.3d 1453, 1460 (9th Cir. 1995).

[4]  The next medical records are dated October 2002.  The notes indicate Lowe-Malone went back on Vicodin in June 2002 after a tenant moved out and she painted the walls.  AR 427.  Dr. Poliquin referred Lowe-Malone to Dr. Minehart.  AR 425-26.

1    The ALJ discounted Dr. Minehart's opinion to the extent it was based on Lowe-

2    Malone's subjective complaints.  AR 91.  For the reasons discussed below, the ALJ's

3    credibility finding is supported by substantial evidence.  *See Morgan*, 169 F.3d at 602

4    (ALJ may properly reject treating physician's opinion based on subjective complaints

5    when ALJ properly discounts claimant's credibility); *see also Tommasetti v. Astrue*, 533

6    F.3d 1035, 1041 (9th Cir. 2008) (ALJ may discount treating physician's opinion that

7    rehashes claimant's own statements).

8    The ALJ articulated specific and legitimate reasons for discounting the opinion of

9    Dr. Minehart.  The ALJ did not err.

10    **D.    Credibility**

11    Lowe-Malone contends the ALJ erred in finding her symptom testimony not

12    credible.

13    "To determine whether a claimant's testimony regarding subjective pain or

14    symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*

15    *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

16    At step one, "the ALJ must determine whether the claimant has presented

17    objective medical evidence of an underlying impairment 'which could reasonably be

18    expected to produce the pain or other symptoms alleged.'"  *Id.* (citations omitted);

19    *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*).  The ALJ found that

20    Lowe-Malone's "medically determinable impairments could reasonably be expected to

21    cause the alleged symptoms."  AR 90.

22    "Second, if the claimant meets this first test, and there is no evidence of

23    malingering, 'the ALJ can reject the claimant's testimony about the severity of her

24    symptoms only by offering specific, clear and convincing reasons for doing so.'"

25    *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination,

26    the ALJ 'must specifically identify what testimony is credible and what testimony

27    undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

28    2006) (citation omitted).

1     The ALJ concluded that Lowe-Malone's statements were not credible to the

2     extent they were inconsistent with his RFC.  AR 90.  The ALJ relied essentially on three

3     reasons:  (1) lack of objective medical evidence to substantiate disability on or before

4     the date last insured; (2) conservative treatment; and (3) inconsistencies between

5     Lowe-Malone's statements and activities.

6                     **1.  Objective Evidence**

7          Although lack of objective medical evidence supporting the degree of limitation

8     "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ

9     may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

10    2005).  As discussed above, the ALJ's finding that the objective medical record did not

11    support an onset date on or before March 31, 2001, is supported by substantial

12    evidence.  AR  90.

13                     **2.  Conservative Treatment**

14         "Evidence of 'conservative treatment' is sufficient to discount a claimant's

15    testimony."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti*,

16    533 F.3d at 1040.

17         The ALJ noted that Lowe-Malone was treated conservatively with medication and

18    physical therapy prior to March 31, 2001, and was found not to be a surgical candidate.

19    AR 90, 318, 478; *see Tommasetti*, 533 F.3d at 1040 (describing physical therapy as

20    conservative treatment).  As discussed above, Dr. Hasday referred Lowe-Malone to

21    physical therapy in April 2000.  Dr. Hasday's report reviewed Lowe-Malone's progress

22    during the rehabilitation program and noted that she was released to work with modified

23    duties (no lifting greater than 25 pounds) in September 2000.  AR 485.  On September

24    20, 2000, Lowe-Malone was discharged from physical therapy because she could

25    perform all activities of daily living without pain and all of the goals were met.[5]  AR 330.

26    _____

27         [5]  Although Lowe-Malone argues the ALJ's interpretation of the note was "labored"
      (JS 15), the ALJ accurately summarized the note and Dr. Hasday's report.  When
28    evidence is susceptible to more than one reasonable interpretation, the court must defer

1    Lowe-Malone argues that the record reflects significant treatment.  In addition to

2    Vicodin, she has taken morphine since 2007, received numerous facet injections

3    beginning in 2003, and has used massage, acupuncture, heat, ice, and/or a TENS unit.

4    JS 6-7 (citing AR 49-50, 275-76, 408).  The ALJ, however, made no finding as to

5    credibility or the nature of Lowe-Malone's treatment during the period after the date last

6    insured, March 31, 2001.

7    ### 3.  Inconsistent Statements and Activities

8    The ALJ considered inconsistencies between Lowe-Malone's statements and

9    activities on or before March 31, 2001.  AR 90.  Lowe-Malone testified that she has

10   constant back pain that spreads to her neck and buttocks.  AR 43-44.  Her pain

11   intensifies if she sits or stands for more than 15 minutes.  AR 44.  She cannot wash

12   dishes, mop, or clean the bathtub.  *Id.*; AR 165.  Sitting in the car "for very long" causes

13   her low back to throb and ache.  AR 44.  She takes frequent breaks to lie down to

14   lessen the pain.  AR 45.  On a 0 to 10 scale, her average pain is about a 5.  AR 46.

15   Prior to March 31, 2001, Lowe-Malone traveled to Canada in August 2000.  AR

16   41, 90, 331.  At the time, Lowe-Malone reported that her pain was 0-2 out of 10 before

17   her trip to Canada, but her pain was temporarily exacerbated to 5/10 on her trip when

18   she sat on a train for over 20 hours and had to sleep upright in a chair.  AR 331.  Lowe-

19   Malone does not challenge the evidence concerning her trip to Canada in 2000.  As of

20   August 2000, she reported being able to do household chores with minimal pain,

21   although she could not return to hiking or aerobics.  AR 331.  She reported being able

22   to walk more than 1 hour in July 2000.  AR 332.

23   The ALJ's credibility finding is supported by substantial evidence, and this court

24   "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v.*

25   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.

26

27

28   to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### E.   Lay Witness Testimony

Lowe-Malone contends the ALJ erred by failing to evaluate lay witness statements properly.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ stated he had "read and considered" the statements of the lay witnesses, Ms. Gidney and Mr. Quaresma, and the statements and testimony of Lowe-Malone's husband. AR 90. The lay witness statements were "relatively credible to the extent of their personal knowledge and observations." AR 91. However, "there is nothing in any of the statements that would persuade me to change the ultimate outcome in the present decision." AR 91.

Gidney, Lowe-Malone's college friend, provided an undated statement. AR 266. She explained that Lowe-Malone was a focused student in college in the 1980s. When Lowe-Malone "got re-injured" while working at UCLA Medical Center, Gidney lived in Phoenix. Lowe-Malone could no longer concentrate, walk, drive or sit for long periods of time. Trips "lately" have been canceled because of Lowe-Malone's pain. Gidney stated that Lowe-Malone's life has been "greatly impacted" by her injuries. *Id.*

Quaresma, Lowe-Malone's husband's boss from 2000 to 2007, provided a statement dated October 29, 2009. AR 267-68. Quaresma knew about Lowe-Malone's multiple back procedures because her husband had to miss work to care for her. AR 267. Lowe-Malone's back symptoms worsened with pregnancy, and she had to limit carrying and holding the baby because of her back pain. *Id.* Lowe-Malone could not sit for a long time and had to stand, lie down or walk around to relieve her pain. AR 268.

Lowe-Malone's husband provided a Function Report – Adult – Third Party, dated April 30, 2008, and testimony at the hearing. The Function Report and hearing

11

1 testimony essentially mirrors Lowe-Malone's Function Report and testimony.  AR 35-75,

2 163-73, 190-97.

3       Lowe-Malone argues that her husband corroborated her testimony.  Because her

4 husband's statements were cumulative, the ALJ properly discounted his credibility.

5 *See Valentine*, 574 F.3d at 694 (When an ALJ has provided clear and convincing

6 reasons for rejecting a claimant's testimony, and the lay witness' testimony was similar

7 to the claimant's testimony, "it follows that the ALJ also gave germane reasons for

8 rejecting the [lay witness'] testimony.").  The remaining two lay witness statements

9 generally described Lowe-Malone's activities after her re-injury in 1999 without being

10 specific as to what occurred on or before March 31, 2001.  This court cannot say that

11 the ALJ erred in interpreting the lay witness statements.

12    **F.    Development of the Record**

13      Lowe-Malone argues that the ALJ had a duty to develop the record by obtaining

14 medical expert testimony.

15      It is the claimant's duty to prove she is disabled.  *Mayes v. Massanari*, 276 F.3d

16 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish

17 medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must

18 provide medical evidence showing that you have impairment(s) and how severe it is

19 during the time you say you are disabled.").

20      If the "medical evidence is not definite concerning the onset date and medical

21 inferences need to be made, SSR 83-20 requires the administrative law judge to call

22 upon the services of a medical advisor and to obtain all evidence which is available to

23 make the determination."  *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).  The

24 onset date must be "supported by the evidence."  *See* Social Security Ruling 83-20;[6]

25 _____

26      [6] Social Security rulings do not have the force of law.  Nevertheless, they "constitute
27 Social Security Administration interpretations of the statute it administers and of its own
  regulations," and are given deference "unless they are plainly erroneous or inconsistent
28 with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)

1   see also Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (" The question . . . is

2   whether the onset date actually chosen is supported by substantial evidence, not

3   whether another date could reasonably have been chosen.").

4        Lowe-Malone argues that a medical expert with expertise in facet arthropathy and

5   its diagnosis, treatment and implications would have resolved an ambiguity created by

6   Dr. Minehart's retrospective opinion as to the onset date.  The ALJ, however, did not

7   find an ambiguity created by Dr. Minehart's opinion.  As discussed above, the ALJ

8   properly discounted Dr. Minehart's opinion as inconsistent with the objective medical

9   evidence.  Although Lowe-Malone argues that the ALJ inappropriately substituted his

10  own lay medical opinion for evidence, the ALJ relied upon the medical records,

11  including the findings of Dr. Hasday and the state agency review physician, Dr. Cooper.

12  AR 89-90, 485, 635.  The ALJ did not err.

13  ### G.    Hypothetical Question to Vocational Expert

14       Lowe-Malone argues that the ALJ's presented an incomplete hypothetical to the

15  vocational expert.

16       An ALJ may rely on vocational expert testimony given in response to a

17  hypothetical question which contained all of the limitations that the ALJ found credible

18  and supported by substantial evidence.  Bayliss, 427 F.3d at 1217-18.  An ALJ is not

19  required to include limitations that are not in his findings.  Rollins v. Massanari, 261 F.3d

20  853, 857 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

21  Given that the ALJ provided clear and convincing reasons, based on substantial

22  evidence in the record, for finding Lowe-Malone's symptom testimony not entirely

23  credible, it was not error to exclude those limitations from the hypothetical.

24       To the extent Lowe-Malone challenges the ALJ's step four finding, her claim fails.

25  "At step four of the sequential analysis, the claimant has the burden to prove that he

26  cannot perform his prior relevant work 'either as actually performed or as generally

27  _____

28  (footnotes omitted).

performed in the national economy.'"  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work."  *Id.* at 844-45; *see also* 20 C.F.R. §§ 404.1520(e) & 416.920(e).

The ALJ's residual functional capacity assessment that Lowe-Malone could do light work was supported by substantial evidence.  *See e.g.,* AR 88-89, 477-78, 485, 635, 752.  Lowe-Malone does not identify any inconsistency between the ALJ's RFC and her past relevant work.  She has not shown error.

## IV.

## CONCLUSION

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 12, 2012

_____
ALICIA G. ROSENBERG
United States Magistrate Judge